Gregory G. Barnett
Martin F. Casey
**CASEY & BARNETT, LLC**
305 Broadway, Suite 1202
New York, New York 10007
(212) 286-0225
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CHIQUITA BRANDS INTERNATIONAL SARL,
CHIQUITA EUROPE B.V. (previously known as Chiquita
Banana Company B.V.) and GREAT WHITE FLEET
LTD.

                                                  **16 Civ.**

      Plaintiffs,

                                                  <u>**COMPLAINT**</u>

    - against -

M/V STAR FIRST, her engines, boilers,
tackle, furniture, apparel, etc., *in rem*; SSI SHIPOWNING I
INCORPORATED, and STAR REEFERS POOL, INC., *in personam*

      Defendants.
------------------------------------------------------------------X

      Plaintiffs, CHIQUITA BRANDS INTERNATIONAL SARL and CHIQUITA EUROPE B.V. (previously known as Chiquita Banana Company B.V.) and GREAT WHITE FLEET LTD. (together referred hereinafter as "CHIQUITA") by and through their attorneys, CASEY & BARNETT, LLC, as and for their Complaint in a cause of action both civil and maritime, respectfully allege upon information and belief:

<u>**JURISDICTION**</u>

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is predicated upon 28 U.S.C. §1333 and the General Maritime Law of the United States.

## PARTIES

2. At all material times, CHIQUITA BRANDS INTERNATIONAL SARL (hereinafter CBIS) was and is a corporation organized and existing by virtue of the law of a state or country other than New York with an office located at A-One Business Centre B4 La Piece, Route de l'Etraz Rolle 1180 Switzerland. CBIS was and is engaged, *inter alia*, in the purchase, exportation and sale of fresh fruit, including bananas, and was the owner in title to the cargos of bananas loaded onboard the M/V STAR FIRST in November and December 2015.

3. At all material times, CHIQUITA EUROPE B.V. (previously known as Chiquita Banana Company B.V.) (hereinafter CHIQUITA EUROPE) was and is a corporation organized and existing by virtue of the law of a state or country other than New York with an office located at Franklinweg 354207 HX Gorinchem The Netherlands. CHIQUITA EUROPE was and is engaged, *inter alia*, in the importation, distribution and sale of fresh fruit, including bananas into Europe and was the successor in title to the cargos of bananas loaded onboard the M/V STAR FIRST in November and December 2015.

4. At all material times, GREAT WHITE FLEET LTD. (hereinafter "GWF") was and is a corporation organized and existing by virtue of the law of a state or country other than New York with an office and place of business located at Hamilton, Bermuda and registered with the Registrar of Companies under number EC 14776. GWF was and is engaged in the transportation of fruit from Central and South America to Europe and was the time charterer of the M/V STAR FIRST in November and December 2015.

5. At all material times, the M/V STAR FIRST was and is an oceangoing reefer vessel built in Japan, that is flagged in the Singapore, has the call sign 9V9359, which engages in the common carriage of merchandise by water for hire between various foreign and domestic ports and

which is now, or will be during the pendency of this action, within the jurisdiction of this Honorable Court.

6. At all material times, defendant SSI SHIPOWNING I was and is a foreign company with an office and place of business located in Singapore and owns, operates, manages and/or charters ships, including the M/V STAR FIRST, that operate between various foreign and domestic ports and, in particular, within this district and was the owner, beneficial owner, owner *pro hac vice*, charterer, manager and/or operator of the M/V STAR FIRST, and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court.

7. Upon information and belief, at all material times, defendant STAR REEFERS POOL, INC. ("STAR") was and is a foreign company with an office and place of business located in the Cayman Islands, and owns, operates, manages and/or charters ships, including the M/V STAR FIRST, that operate between various foreign and domestic ports and, in particular, within this district and was the owner, beneficial owner, owner *pro hac vice*, charterer, manager and/or operator of the M/V STAR FIRST, and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court.

8. This action is brought on behalf of and for the interest of all parties who may be or may become interested in the claims herein referred to, as their respective interests may ultimately appear, and plaintiffs are entitled to maintain this action.

## RELEVANT FACTS

9. On or about September 11, 2013 GWF entered into a time charter with Star for the M/V STAR FIRST. The vessel was chartered, among other things, to transport CHIQUITA bananas in containers on deck and pallets underdeck from Central America to the ports of Sheerness, U.K., Flushing, The Netherlands and Bremerhaven, Germany.

3

10. At the time of signing the charter party, STAR understood and agreed that the M/V STAR FIRST would be one of 4 vessels calling at ports in the U.K., The Netherlands and Germany on a liner service with Great White Fleet for the Chiquita European market and that any disruptions or delays in the liner service would cause significant economic damage to CHIQUITA.

11. At the time the charter party was executed by Great White Fleet and STAR, STAR understood and agreed that the M/V STAR FIRST would be on a regular service with set dates and times for arrivals and departures from Port and that time was of the essence with respect to the schedule of the said vessel.

**Voyage 1546**

12. On or about November 16th, 2015, CHIQUITA and/or their representatives delivered to the *in personam* defendants and the M/V STAR FIRST, at the ports of Moin and Almirante, a shipment of fresh green bananas.

13. A portion of the fruit was loaded under deck while other fruit was loaded into containers and stowed on-deck of the M/V STAR FIRST. Both the bananas and containers were owned by and/or consigned and/or leased to CHIQUITA, and were in good order and condition at the time they were delivered to the *in personam* defendants and the vessel for carriage aboard the M/V STAR FIRST.

14. The transportation of the fruit was all in consideration of an agreed freight and in accordance with the terms of one or more bills of lading, which were then and there signed and delivered to the shipper of the cargo by the duly authorized agent, representative and/or employee of the *in personam* defendants and the M/V STAR FIRST.

4

15. Plaintiffs refer to said bills of lading for greater certainty as to the contracts of carriage for the fruit in question.

16. On or about November 16th 2015, the vessel departed from Almirante and proceeded to Sheerness, U.K., the first discharge port.

17. During transit, the Vessel encountered a storm and on November 28th, 2015, while the vessel was in still in transit, the vessel reported that a total of thirteen (13) containers were lost overboard into the sea and other containers damaged.

18. The vessel arrived in Sheerness, U.K. on November 29th. Normal discharge was impossible due to the damage caused to the vessel by the containers coming loose onboard the vessel during the referenced storm.

19. As a result of the damage to the fruit that was in the collapsed containers and containers that were lost overboard, CHIQUITA was forced to mitigate their loss by hiring a crane to remove the damaged containers, sorting through the fruit to dispose of fruit and selling other fruit at a reduced price from what they would have realized. In addition, CHIQUITA incurred the expense of cleaning, storing and disposing of damaged containers that were still on deck.

20. CHIQUITA also sustained losses with respect to additional costs related to the excessive delay of the vessel, such as lost sales and increased fuel consumption.

21. In an effort to minimize the loss, CHIQUITA skipped the last scheduled port of call, Bremerhaven and had the vessel proceed at maximum speed to load her next cargo in Central America.

22. As the owner, operator, charterer, and/or manager of the M/V STAR FIRST, defendants SSI SHIPOWNING I and Star Reefers Pool were responsible for properly manning, maintaining and repairing the vessel and for otherwise exercising due diligence to ensure that the vessel

was seaworthy and fit to carry the cargoes that were delivered to and loaded on board the M/V STAR FIRST during North Atlantic voyages. Moreover, the said defendants were sub-bailees of the cargoes and containers referred to aforesaid and in any event, as the parties having custody and control of the property and chattels of others, said defendants were obligated to exercise due diligence to properly load, stow and care for those cargoes and containers and to deliver them timely, a responsibility which included exercising due diligence to ensure that the M/V STAR FIRST was seaworthy for the voyage.

23. The losses sustained by CHIQUITA were not the result of any act or omission on the part of CHIQUITA but, on the contrary, were due solely as the result of the negligence, fault, neglect, breach of contracts of carriage, charter and bailment on the part of *in personam* defendants as well as the unseaworthiness of the M/V STAR FIRST which was discoverable by the exercise of due diligence.

24. By reason of the foregoing, plaintiffs have sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $1,347,844.17.

### VOYAGE 1551

25. On or about December 24th, 2015, CHIQUITA and/or their representatives delivered to the *in personam* defendants and the M/V STAR FIRST, at the ports of Moin and Almirante, a shipment of fresh green bananas.

26. A portion of the fruit was loaded under deck while other fruit was loaded into containers and stowed on-deck of the M/V STAR FIRST. Both the bananas and containers were owned by and/or consigned and/or leased to CHIQUITA, and were in good order and condition at the

time they were delivered to the *in personam* defendants and the vessel for carriage aboard the M/V STAR FIRST.

27. The transportation was all in consideration of an agreed freight and in accordance with the terms of one or more bills of lading, which were then and there signed and delivered to the shipper of the cargo by the duly authorized agent, representative and/or employee of the *in personam* defendants and the M/V STAR FIRST.

28. Plaintiffs refer to said bills of lading for greater certainty as to the contracts of carriage which they represent and will produce the originals or copies thereof at trial.

29. On or about December 24th, 2015 the vessel departed from Almirante and proceeded to Sheerness, U.K., the first discharge port.

30. During transit, the Master of the Vessel refused to follow GWF's voyage instructions. Instead, the Master delayed the vessel by unreasonably ignoring weather routing information and GWF's scheduling orders. The defendants knew that any delay in the agreed upon schedule would cause damages to Chiquita.

31. Due to the delays and insufficient fuel onboard the vessel for the voyage, the Master refused to proceed without first calling at the Port of Lisbon to take on additional fuel.

32. As a consequence of the unreasonable and unjustified actions of the Master, the vessel was again significantly delayed during the voyage.

33. The Vessel arrived at the next port of call, Flushing, 5 days late.

34. As a result of the delay, fruit was damaged, CHIQUITA lost sales, had additional fuel expenses and incurred further costs relating to mitigation of the claim.

35. As the owner, operator, charterer, and/or manager of the M/V STAR FIRST, defendants SSI SHIPOWNING I and Star Reefers Pool were responsible for properly manning, maintaining

and repairing the vessel and for otherwise exercising due diligence to ensure that the vessel was seaworthy and fit to carry the cargoes that were delivered to and loaded on board the M/V STAR FIRST during North Atlantic voyages. Moreover, the said defendants were sub-bailees of the cargoes and containers referred to aforesaid and in any event, as the parties having custody and control of the property and chattels of others, said defendants were obligated to exercise due diligence to properly load, stow and care for those cargoes and containers and deliver them timely, a responsibility which included exercising due diligence to ensure that the M/V STAR FIRST was seaworthy for the voyage.

36. The losses sustained by CHIQUITA were not the result of any act or omission on the part of CHIQUITA but, on the contrary, were due solely as the result of the negligence, fault, neglect, breach of contracts of carriage, charter and bailment on the part of *in personam* defendants as well as the unseaworthiness of the M/V STAR FIRST which was discoverable by the exercise of due diligence.

37. By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $1,102,949.79.

38. Plaintiffs have a maritime lien against the M/V STAR FIRST and the defendants for the damages referred to herein and will enforce that lien in these proceedings.

**WHEREFORE**, Plaintiffs pray:

    1. That process in due form of law issue against the defendants, citing them to appear and answer under oath all and singular the matters alleged in the Complaint;

2. That if the defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk to issue Process of Maritime Attachment and Garnishment to secure plaintiffs' claims;

3. That *in rem* service of process be issued against the M/V STAR FIRST, her engines, boilers, tackle, furniture, apparel, etc.; that the vessel be seized and that all those claiming an interest in her be cited to appear and answer under oath both all and singular the matters aforesaid;

4. That judgment may be entered in favor of Plaintiffs against Defendants, joint and severally, for the amount of Plaintiff's damages in the amount of at least $2,450,793.96, together with pre-judgment and post judgment interest thereon, attorney fees and costs; and,

5. That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated: New York, New York
      August 3, 2016
      153-79/80

                                        CASEY & BARNETT LLC
                                        Attorneys for Plaintiffs

By: /s/ Gregory Barnett
        Gregory G. Barnett.
        Martin F. Casey
        305 Broadway, Suite 1202
        New York, New York 10007
        (212) 286-0225